**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John DOHM, Defendant-Appellant.**

**No. 78–5030.**

United States Court of Appeals,
Fifth Circuit.

June 13, 1980.

---

Jerome Ullman, Miami, Fla. (Court-appointed), and Donald L. Ferguson, Miami, Fla., for defendant-appellant.

Hugh F. Culverhouse, Jr., Linda C. Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before COLEMAN, Chief Judge, JOHN R. BROWN, AINSWORTH, GODBOLD, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE, KRAVITCH, FRANK M. JOHNSON, Jr., GARZA, HENDERSON, REAVLEY, POLITZ, HATCHETT, ANDERSON, RANDALL, TATE, SAM D. JOHNSON and THOMAS A. CLARK, Circuit Judges.*

HATCHETT, Circuit Judge.

We consider this case en banc to determine whether the government's use at trial of statements made by an accused at a pre-trial bail hearing constitutes a denial of the accused's fifth amendment rights against self-incrimination. We hold that it does not, but we reverse on another ground.

Appellants, John Dohm, Robert Rowen, Brian Martin, and Harold Kramer were charged with conspiracy to sell one kilogram of cocaine and with possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) & 846. Dohm was found guilty on both counts and sentenced to three years imprisonment and three years special probation. The trial court ordered that the two sentences be served concurrently.

The jury found Rowen guilty of the conspiracy charge, but could not reach a verdict on the possession charge. The trial court sentenced Rowen to 18 months in prison, to be followed by three years of special probation.

The trial court granted Harold Kramer's motion for directed verdicts of acquittal on both counts. The jury did not reach a verdict on either count against Brian Martin. After a second trial against Martin ended with the same result, the government's motion to dismiss the indictment was granted.

The panel opinion in this case is reported, United States v. Dohm, 597 F.2d 535 (5th Cir. 1979). In that opinion, the majority held that certain statements made by Dohm at his bail hearing before a United States

---

* GOLDBERG, Circuit Judge, was a member of the en banc court under 28 U.S.C.A. § 46(c) and participated in the oral argument of the case en banc. Since that time he has taken senior status and therefore does not participate in this decision. CHARLES CLARK, Circuit Judge, did not participate in the consideration or decision of this case.

Magistrate were admissible against him at trial in the government's case-in-chief. The dissenting judge thought the statements made by Dohm at his bail bond hearing were inadmissible against him at trial. We took the case en banc to decide whether the statements were admissible.

## FACTS

This episode began on August 2, 1977, when Drug Enforcement Administration (DEA) undercover agents Jerry Castillo and Michael O'Connor met with Dohm and Martin at a Miami restaurant and lounge. The meeting was for the purpose of discussing the purchase of cocaine by Agent Castillo.

Two days after the meeting, Martin called Castillo at a special phone set up at the DEA regional office in Miami. Martin indicated that everything was arranged for the drug buy. Later, arrangements were made for Castillo to drive to Martin's apartment. Castillo and O'Connor then drove to Martin's apartment, from which they followed Martin and Rowen to Dohm's house.

Castillo went into Dohm's house with Martin and Rowen, while O'Connor waited in the car across the street. In the kitchen, Castillo met Dohm and noticed a quantity of white powder on the top of the kitchen counter. The two men discussed the price of a kilogram of cocaine and Castillo agreed to pay $41,200 for a quantity slightly less than a kilogram. Castillo said that he would have to go to the car to get the money. There was some discussion about Castillo leaving the house at that moment because suspicious vehicles were seen outside. Castillo prevailed by insisting that the deal be concluded immediately, because he had to catch an airplane. Escorted by Martin, he was allowed to leave the house.

Once Castillo was outside the house, he gave the prearranged arrest signal to O'Connor and other agents, and Martin and Kramer were arrested. The agents then reentered the apartment, placed Dohm and Rowen under arrest, and seized one kilogram of cocaine.

## ADMISSION OF TESTIMONY AS TO DOHM'S BAIL HEARING STATEMENT

Following the arrests a United States Magistrate held a bail hearing for Dohm and the other three defendants. Dohm contends that the trial court committed reversible error in allowing into evidence testimony by government agents as to statements he made at the initial bail hearing. We disagree with Dohm's contention that statements made by an accused while seeking bail are necessarily involuntary and coerced.

At the trial on the merits, Agent Castillo, over objection, was allowed to testify (irrelevancies omitted) as follows:

Q. And, before Judge Palermo asked these four defendants any questions, did he advise them of any of their constitutional rights?

A. [Agent Castillo] Yes, he did, sir. He advised each individual of his constitutional rights.

Q. And, what rights would those be, sir?

A. That's their right to remain silent, right to obtain counsel, a lawyer, if they can't afford a lawyer would be appointed to them, and—

\* \* \* \* \* \*

Q. Recalling your attention to Mr. Dohm, do you recall Judge Palermo advising Mr. Dohm of his rights?

A. Yes, I do, sir.

Q. Do you recall Judge Palermo [telling him] that anything he said at the hearing could be used against him in later proceedings?

A. Yes, he did.

Q. And after the Judge admonished him as to these rights, did Mr. Dohm make any statements in your presence?

A. Yes, he did make a statement.

Q. Would you tell the Court and jury what those statements were?

A. *Mr. Dohm made a statement to the fact that it took him approximately two weeks to obtain the one kilogram* [of cocaine] *he handed me on that day in August.* [Italics ours].

The testimony of Agent O'Connor is (after the preliminaries) as follows:

Q. And after he was advised of these constitutional rights, did Mr. Dohm make any statements?

A. Yes, he did.

\* \* \* \* \* \*

A. Mr. Dohm stated to the Court that he did negotiate with Agent Castillo to sell him—

MR. BARABAN: Objection, Your Honor. That's not the statement that was made.

THE COURT: Well, you will be able to cross examine him. He is entitled to state what the statement was, and you can cross examine him on it. That's all I can do. I don't know what the statement was. Go ahead.

THE WITNESS: That Mr. Dohm had stated to the Court that he did negotiate with Agent Castillo to sell him approximately one to two kilograms of cocaine at a later date.

At this time, Magistrate Palermo suggested to Mr. Dohm that he not say anything until he had a lawyer present.

At this initial appearance before the magistrate, which is required by Rule 5 of the Federal Rules of Criminal Procedure, Dohm and the other defendants were given a copy of the complaint against them. They were warned that they had a right to remain silent and that any statement they made could be used against them in court. The magistrate informed the defendants that they had a right to an attorney and that the court could appoint an attorney for anyone who could not afford one. Dohm stated that he thought he had the money to hire an attorney, but he would have to find one.

The magistrate also explained to the defendants that they were entitled to have a preliminary hearing at which the government would have to make a probable cause showing, and that if probable cause were found, the matter would be referred to the grand jury. Then the bail discussion began. After questioning Dohm about his background, employment, and community ties, Judge Palermo asked Agent O'Connor how Dohm had participated in the alleged crime.

The following colloquy took place:

THE COURT: Agent, what is his participation?

AGENT O'CONNOR: Mr. Dohm was the main source of the buy.

Mr. Rowen introduced Agent Castillo to him and during undercover negotiations Mr. Dohm stated to the agent that if this went through that he would be able to supply the agent approximately one to two kilos on a steady basis after this.

THE WITNESS: But, your Honor, sir, it wasn't true, but that's what I told them.

THE COURT: Who did he tell that to?

AGENT O'CONNOR: Agent Castillo.

THE COURT: Are you here?

AGENT O'CONNOR: Yes, sir.

AGENT CASTILLO: Yes, sir I am.

THE COURT: Did he tell you that?

AGENT CASTILLO: Yes, sir.

I told him if he would be willing to supply on a steady basis that this was, you know, the first time and I was a good customer and I would come to him, you know, several times afterward, and if there would be any problems in supplying me with additional amounts, and he said it would be no problem.

THE WITNESS: It's—(inaudible).

THE COURT: Now, remember you don't have a lawyer with you now and this is just a bond hearing.

THE WITNESS: Yes.

THE COURT: You might hurt yourself to get involved too much, but if you know what you're doing, what you're saying, its—(inaudible).

THE WITNESS: I would just say that it took me almost two weeks to get what I got, and I don't think I could get it again.

Dohm argues that he was compelled to forfeit his fifth amendment right to remain silent, in order to safeguard his eighth amendment right to reasonable bail. He relies on *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), where the Court held that incriminating testimony given on a motion to suppress evidence on fourth amendment grounds is inadmissible at trial on the merits.

An accused person in custody has the absolute right to remain silent and to have an attorney present during any questioning. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The accused must also be warned that any statements made can be used against him at trial. These rights are necessary to protect the accused's fifth amendment privilege against self-incrimination.

The fifth amendment privilege against self-incrimination was not designed affirmatively to encourage sealed-lips, but to protect the accused's "freedom to decide whether to assist the state in securing his conviction." *In re Gault*, 387 U.S. 1, 47, 87 S.Ct. 1428, 1454, 18 L.Ed.2d 527 (1967). The privilege does not preclude a witness from testifying voluntarily in matters which may incriminate him. *See, e. g., United States v. Washington*, 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1979); *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

We find no merit in Dohm's contention that he was "compelled' to make the incriminating statement in order to secure his guarantee of reasonable bail. As the Supreme Court has recognized, the Constitution does not prohibit every element which influences a criminal suspect to make incriminating admissions. In *United States v. Washington*, the Court held that testimony given before a grand jury may be used against the declarant in a subsequent trial. The Court stated:

Of course, for many witnesses the grand jury room engenders an atmosphere conducive to truth telling, for it is likely that upon being brought before such a body of neighbors and fellow citizens, and having been placed under a solemn oath to tell the truth, many witnesses will feel obligated to do just that. But it does not offend the guarantee of the Fifth Amendment if in that setting a witness is more likely to tell the truth than in less solemn surroundings. The constitutional guarantee is only that the witness be not compelled to give incriminating testimony.

*Id.* 431 U.S. at 187–188, 97 S.Ct. at 1819.

The *Simmons* rationale is inapplicable in this factual setting. There, the Court was concerned that a defendant who knew that his testimony would be admissible against him at trial would be deterred from presenting the testimonial proof of standing necessary to assert his fourth amendment claim. The Court stated:

[A] defendant with a substantial claim for the exclusion of evidence may conclude that the admission of the evidence, together with the Government's proof linking him, is preferable to risking the admission of his other testimony connecting himself with the seized evidence. . .

*Id.* 390 U.S. at 392–393, 88 S.Ct. at 976.

Testimony required at a fourth amendment suppression hearing differs in nature from that required at a bail bond hearing. In the former, the testimony given must necessarily go to the ultimate facts and issues in the case. The Supreme Court in *Simmons* noted that "at one time, a defendant who wished to assert a fourth amendment objection was required to show that he was the owner or possessor of the seized property or that he had a possessory interest in the searched premises." *Id.* at 390, 88 S.Ct. at 974 (footnote omitted). This problem was somewhat alleviated by *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).[1] Nevertheless, in ad-

---

1. In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Court limited the blanket "legitimately on the premises" test expressed in *Jones*. The Court held that the proper analysis should be in terms of substantive fourth amendment law rather than that of standing. The Court suggested that the proper test to be used is whether the defendant has a "legitimate expectation of privacy" in the area searched. In a footnote in *Rakas*, the Supreme Court stated: "We have not yet had occasion to decide whether the automatic standing rule of *Jones* survives our decision in *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) . . ." *Id.* 439 U.S. at 135, 99 S.Ct. at 426 n. 4, at 58 L.Ed.2d 396.

dressing the particular facts in *Simmons*, the Court went on to say:

> Under the standing rules set out in *Jones*, there will be occasions, even in prosecutions for non-possessory offenses, when a defendant's testimony will be needed to establish standing. This case serves as an example. Garrett evidently was not in Mrs. Mahon's house at the time his suitcase was seized from her basement. The only, or at least the most natural, way in which he could be found standing to object to the admission of the suitcase was to testify that he was its owner. Thus, his testimony is to be regarded as integrally part of his Fourth Amendment exclusion claim.

*Id.* 390 U.S. at 391, 88 S.Ct. at 974–975.

A defendant at a bail bond hearing need not divulge the facts in his case in order to receive the benefits of the eighth amendment right to bail, as implemented by Rule 46 of Fed.R.Crim.P. at 18 U.S.C. § 3146.[2]

Section 3146(b) of Title 18, United States Code sets forth the criteria for determining what conditions of release, short of imprisonment, will most reasonably assure the appearance of the defendant at trial.

Among the factors listed are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the accused; (3) the accused's family ties, employment, financial resources, character and mental condition; (4) the length of his residence in the community; (5) his conviction record; and (6) his record of appearance at court proceedings or flight to avoid prosecution or failure to appear at court proceedings. Of the more than ten factors listed, only two deal directly with the offense. The first of these two, the nature and circumstances of the offense charged, does not require explanation from the defendant but is related more to the charging instrument. Likewise, the second factor, the weight of the evidence against the accused, depends upon the strength of the government's prima facie case. A bail bond hearing is not a trial on the merits at which the guilt of the accused is adjudicated. We conclude that when proper warnings are given, testimony presented by a defendant to meet bail requirements may be admissible against him at trial.

█ In light of the troublesome factual setting presented by this record, however,

---

1. The Supreme Court has agreed to review the "automatic standing" rule for possessory offenses. *United States v. Salvucci*, 599 F.2d 1094 (1st Cir. 1979), *cert. granted*, 444 U.S. 989, 100 S.Ct. 519, 62 L.Ed.2d 418 (1979).

2. § 3146. Release in noncapital cases prior to trial.

(a) Any person charged with an offense, other than an offense punishable by death, shall, at his appearance before a judicial officer, be ordered released pending trial on his personal recognizance or upon the execution of an unsecured appearance bond in an amount specified by the judicial officer, unless the officer determines, in the exercise of his discretion, that such a release will not reasonably assure the appearance of the person as required. When such a determination is made, the judicial officer shall, either in lieu of or in addition to the above methods of release, impose the first of the following conditions of release which will reasonably assure the appearance of the person for trial or, if no single condition gives that assurance, any combination of the following conditions:

(1) place the person in the custody of a designated person or organization agreeing to supervise him;

(2) place restrictions on the travel, association, or place of abode of the person during the period of release;

(3) require the execution of an appearance bond in a specified amount and the deposit in the registry of the court, in cash or other security as directed, of a sum not to exceed 10 per centum of the amount of the bond, such deposit to be returned upon the performance of the conditions of release;

(4) require the execution of a bail bond with sufficient solvent sureties, or the deposit of cash in lieu thereof; or

(5) impose any other condition deemed reasonably necessary to assure appearance as required, including a condition requiring that the person return to custody after specified hours.

(b) In determining which conditions of release will reasonably assure appearance, the judicial officer shall, on the basis of available information, take into account the nature and circumstances of the offense charged, the weight of the evidence against the accused, the accused's family ties, employment, financial resources, character and mental condition, the length of his residence in the community, his record of convictions, and his record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings.

we hold that Dohm did not make a knowing and intelligent waiver of his right against self-incrimination. It was, therefore, reversible error for the trial court to admit into evidence the statements that appellant made at his bail hearing.

Before Dohm spoke at his bail hearing, the magistrate stated the following:

THE COURT: All right.

All right, gentlemen, if you wish I can give you a bond hearing at this time or you can wait until you get an attorney. That's your right.

If you feel like you may jeopardize anything or hurt yourself by answering questions under oath, then you certainly have the right to wait for a full bond hearing until you have your attorney with you. If you wish, though—I will only take sworn testimony which subjects you to perjury, and I also advise you that you may not have an attorney and you may say something that might hurt you in future proceedings.

In other words, the law says that the testimony here really should be used against you at future proceedings but I don't know how it can be done. Technically, they won't use it, but then they're here listening and there is a Government attorney and Government agents so— I do this because you don't have an attorney with you and we try to advise you and so on.

I'm either telling you to have your bond hearing now or not to. I'm just trying to advise you of the possibilities, then you make an intelligent decision.

■ The above statement, made to a defendant without counsel, is misleading and confusing. The magistrate cautioned— "you may say something that might hurt you in the future proceedings . . . the law says that the testimony here really should be used against you at future proceedings"—but then he disclaimed—"but I don't know how it can be done. Technically, they won't use it." In view of such a confusing warning appellant was not adequately warned of the consequences of any statements which he might make. Any statement made by a judicial officer, especially to a defendant who is not represented by counsel, is subject to strict scrutiny as to its effect on the defendant. Because the magistrate failed to accurately advise Dohm of his *Miranda* rights, we hold that Dohm did not knowingly and intelligently waive his fifth amendment right to avoid self-incrimination.

CONCLUSION

Except as to the admission of the bail bond hearing statements, we agree with the panel opinion.[3] We reverse Dohm's conviction and remand for a new trial. Accordingly, the judgment of the district court is reversed.

REVERSED AND REMANDED.

R. LANIER ANDERSON, III, Circuit Judge, with whom ALVIN B. RUBIN, RANDALL and THOMAS A. CLARK, Circuit Judges, join, specially concurring:

I concur in all of the majority opinion except that part which addresses the proper interpretation of *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1966). I agree with that part of the majority opinion which holds that Dohm did not make a knowing and intelligent waiver of his right against self-incrimination, and that it was therefore reversible error for the trial court to admit into evidence the statements he made at his bail hearing. Accordingly, it is not necessary to the decision in this case to reach the constitutional issue—i. e., interpretation of the *Simmons* case—and I would not do so. *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 396 (1936) (Brandeis, J., concurring).

VANCE, Circuit Judge:

I concur in the result only.

---

**3.** We make this statement solely for the benefit of the parties involved. As provided by the local rules, the original panel opinion was vacated pursuant to the granting of rehearing en banc, and has no precedential value. 5th Cir.R. 17.

COLEMAN, Chief Judge, with whom JOHN R. BROWN, AINSWORTH, GEE, REAVLEY, POLITZ and SAM D. JOHNSON, Circuit Judges, join, concurring in part and dissenting in part.

The real issue in Dohm's appeal is whether he was compelled to surrender one constitutional right in order to preserve another. The panel majority, in an opinion which I authored, held that there had been no such compulsion. The *en banc* Court agrees. On that point, I, of course, concur in the *en banc* opinion.

It is to be regretted, however, that the *en banc* Court nevertheless reverses the conviction, mandating a new trial. Admitting evidence of what Dohm blurted out to the Magistrate after being warned at least three times to be careful about making incriminating statements was *harmless beyond a reasonable doubt.*

Omitting the statement, the remaining proof of guilt is overwhelming, indeed unassailable. The length of time it took Dohm to assemble the cocaine was immaterial. The controlling question was whether he had it in his possession and joined in selling it. About that there is really no dispute.

After the agents were taken to Dohm's home by his associates, the cocaine was found in his presence, openly displayed on the counter in his own kitchen. Dohm agreed to sell the cocaine for the munificent sum of $41,200.

To escape conviction under these circumstances could be appraised only as a legal wonder of the first magnitude. His retrial will be a needless waste of judicial time and resources.

I would affirm Dohm's conviction, close the case, and relieve him of any further misery over what is to become of him after being caught utterly red handed and afterwards convicted on open and shut proof.

TATE, Circuit Judge, concurring in part and dissenting in part.

I concur in the plurality's reversal of this conviction. I agree that the judge's "confusing and misleading" instruction prevent-ed the defendant from knowingly and intelligently waiving his Fifth Amendment privilege against self-incrimination.

Nevertheless, for the reasons stated below as well as those extensively outlined by Judge Goldberg in his dissent from the original panel opinion, 597 F.2d 535, 544 (5th Cir. 1979), I respectfully dissent from that portion of the plurality opinion that holds that incriminating statements made by a defendant at a pre-trial bail hearing may be admitted against him at a subsequent trial on the merits of his guilt or innocence. I primarily believe that through the exercise of our supervisory powers we should accord "use immunity" against trial use of bail-hearing testimony in order to assure fair and efficient pre-trial bail proceedings. *See* Note, Resolving Tensions Between Constitutional Rights: Use Immunity in Concurrent or Related Proceedings, 76 Colum.L. Rev. 674 (1976). However, if we are not willing to so act at this time, then, in my belief, Judge Goldberg's dissent from the initial panel opinion correctly states that the defendant was unconstitutionally forced to surrender Fifth Amendment rights in the proper exercise of his Eighth Amendment rights.

Aside from any constitutional objection, I believe that this case presents an opportunity for an exercise of this court's supervisory powers, *cf. United States v. Dunbar,* 611 F.2d 985 (5th Cir. 1980) (en banc), to hold that bail-hearing testimony is not independently admissible at a defendant's trial on the merits. In a somewhat analogous context—the admissibility at trial of a pre-trial guilty plea that is subsequently withdrawn—the Supreme Court had held, prior to any codification by rule, that a withdrawn plea could not be admitted into evidence at the merit-trial because this would effectively negate the decision to allow the plea to be withdrawn. *Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). In reversing its own jurisprudence and following the lead of *Kercheval,* the New York Court of Appeals has additionally noted that admitting such a withdrawn plea forces a defendant, in substance

if not in form, to testify against himself. *People v. Spitaleri*, 9 N.Y.2d 168, 212 N.Y. S.2d 53, 173 N.E.2d 35 (1961). Similarly, when we allow statements made by a defendant at a bail hearing to be used against him at his merit-trial, in effect we permit the defendant to lose his right not to take the stand and his right to require the government to prove his guilt beyond a reasonable doubt independently of his own testimony.

Under the rule expressed in today's plurality opinion, a defendant who makes an incriminating statement at an informal bail hearing, in his attempt to be accorded his Eighth Amendment right to non-excessive bail, sacrifices his constitutional right to testify or not, as he chooses. He must either take the stand at the trial and give up his right to force the government to prove its case without his help, or he must sit mute while the government uses his own words to convict him, without any opportunity to explain his statements (if he can). Independently of constitutional requirement, I do not think that this court should sanction the placing of a defendant in such a position, by which either what should be an efficient and fair hearing to implement his constitutional right to non-excessive bail must proceed without his relevant testimony, or else, at this early stage of the prosecution, the defendant must sacrifice one constitutional right (his right not to testify at the later trial on the merits) if he elects to testify at the bail-hearing in an attempt to secure another constitutional right (non-excessive bail).

The supervisory rule of *Kercheval* has been codified in Rule 410 of the Federal Rules of Evidence, which provides, *inter alia*, that no evidence of a guilty plea that is later withdrawn, or of any statements made in connection with such a plea, is admissible in any civil or criminal trial, except for the limited purposes of impeachment or proving perjury. I believe that this court, pursuant to its supervisory powers, should bar the subsequent admission of statements made by a defendant at a pre-trial bail hearing in the same way that *Kercheval* and Rule 410 bar the admission into evidence of the guilty plea that has subsequently been withdrawn. Such a rule, making a defendant's statements at a bail hearing inadmissible at trial, could, if codified, essentially track the language of Rule 410.[1]

Forcing the defendant either to sit mute or to run the risk of imperiling his right not to take the stand at a subsequent trial inefficiently injects unnecessary formality and risk into what should be an informal pre-trial proceeding. A bail hearing is only designed to provide the judge with sufficient information to determine what steps are necessary to assure the defendant's presence at trial. The trial judge has great discretion to evaluate the various relevant factors, and he should have the input of the defense as well as the prosecution. The judge certainly cannot attempt to come to any final decision on the merits, but he should have access to any information that the defendant deems relevant to the appropriate amount of bail. The defendant has a constitutional right to non-excessive bail, and it seems to me that this court should use its supervisory power to insure that the purpose of bail hearing is achieved with the aid of relevant information furnished by the defendant himself, who sometimes is the most available (if not the only) source of such testimony.

Since the plurality, instead of exercising this court's supervisory power, chooses to reach the constitutional issue, I agree with Judge Goldberg, 597 F.2d 535, 544 (5th Cir. 1979), that the defendant in this case was unconstitutionally compelled to choose between two of his constitutional rights, his Fifth Amendment privilege against self-incrimination and his Eighth Amendment

---

1. A codification of the rule that I propose might read as follows:

> Statements made by a defendant at a pretrial bail hearing are not admissible against said defendant at any subsequent criminal trial. This rule shall not apply to the introduction of any voluntary and reliable statements made in court on the record at such a bail hearing where offered for impeachment purposes or in a subsequent prosecution of the declarant for perjury or false statement.

right to non-excessive bail. The plurality opinion attempts to distinguish what I consider to be the clearly controlling case, *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), by stating that the right to bail is guaranteed whether or not an accused testifies at the bail hearing. However, none of the guarantees in the Bill of Rights are dependent in the abstract on the testimony of an accused, although on many occasions (*cf. Simmons*), these guarantees cannot be implemented without the accused's testimony.

I cannot agree that the Eighth Amendment right to non-excessive bail is entitled to less protection than the Fourth Amendment right against unreasonable searches and seizures or the Fifth Amendment privilege against self-incrimination. Further, the Eighth Amendment guarantees not just the right to bail, but the right to non-excessive bail; non-excessive bail for a big-time drug dealer may well be excessive bail for the small fish that defendant alleges himself to be. Without the testimony of the accused himself, the magistrate could not efficiently exercise the discrimination constitutionally required of him in this respect. The weight to be given to the government's prima facie case or to a defendant's statement is certainly within the magistrate's discretion, but on the other hand, the defendant not unreasonably concluded that the recommended amount of bail would be determined to be appropriate for him unless he rebutted the government testimony portraying him as a big-time drug dealer. If the plurality's holding is correct, the defendant essentially gave up his right not to testify at a subsequent trial simply because he rebutted the government testimony that might well have inclined the judge to fix a much higher bail.[2]

Beyond these observations, I can only rely on Judge Goldberg's scholarly and comprehensive dissent.

For the reasons stated, I respectfully dissent from the plurality holding that, except under the peculiar circumstances here present, permits a defendant's statements at his bail hearing to be received as admissions at his trial of guilt or innocence; otherwise, I concur in the plurality opinion and its reversal and remand for a new trial.

---

2. As noted in Judge Goldberg's dissent, the judge did set the defendant's bail at $10,000, $15,000 less than the government requested, 597 F.2d at 549, and he also apparently referred to the defendant's incriminating remarks. *Id.*