**UNITED STATES of America**

v.

**Mack JOHNSON, Jr. and Wesley Johnson.**

**Crim. No. 81–93.**

United States District Court,
E. D. Pennsylvania.

June 18, 1981.

stance he distributed was not cocaine; on the morning of March 6, 1981, before his bail hearing, he again asserted that the white powder was not cocaine; and at his bail hearing, later that morning, he stated "that it wasn't no cocaine." Transcript of Bail Hearing at 6. Movant seeks to suppress these three statements. I discuss the three statements *seriatim*.

## II. Discussion

### A. The post-arrest statement

On March 5, 1981, DEA undercover Agent Davis went to Matt's Bar in Philadelphia in order to buy cocaine from defendants. The defendants and Davis went into the bathroom where defendant Wesley Johnson gave Davis a brown paper bag which supposedly contained cocaine. Davis told defendant Mack Johnson that his money was out in his car and the two men then left the bar and walked to Davis's automobile. When they reached the car, Davis gave a prearranged arrest signal to other DEA agents who then arrested defendant Mack Johnson.[1] At this time, the DEA agents had no reason to suspect that this white powder was not cocaine, especially since an earlier sample obtained from defendants had field tested positive.

After his arrest, movant was driven to DEA offices at 6th and Arch Streets. He was taken to a detention room where he was informed of his *Miranda* rights. Movant immediately responded:

"You're not going to arrest me, are you?" I [Davis] said, "Yes, I am."

He [movant] said, "Well, why?" So, I [Davis] told him [movant], for violation of the Controlled Substance Act.

So, he [movant] said, "Well, look, that stuff that I gave you wasn't anything." So, I [Davis] said, "What do you mean by that?"

He [movant] said, "That stuff that I gave you isn't anything. I got that stuff at the Head Shop."

Judy L. Goldstein, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

George F. Schoener, Jr., Philadelphia, Pa., for Mack Johnson.

M. Mark Mendel, Ltd., Philadelphia, Pa., for defendants.

## MEMORANDUM

JOSEPH S. LORD, III, Chief Judge.

### I. Introduction

Defendants were indicted for conspiring to defraud the United States in violation of 18 U.S.C. § 1341 in that they sold to Drug Enforcement Administration (DEA) agents a white powder which defendants had represented was cocaine but in fact was not. After his arrest, movant Mack Johnson made three oral statements which the Government intends to introduce at trial: on March 5, 1981, the day of his arrest, he told DEA agents, *inter alia*, that the sub-

---

1. Wesley Johnson was later arrested inside the bar by other DEA agents.

He [movant] said, "You can't arrest me for that stuff because it isn't anything." Transcript of Suppression Hearing at 12.

■ These statements are admissible at trial since movant was not subjected to custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). Although movant was in custody, *see generally Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (*per curiam*), there was no "interrogation," *see Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). When Davis informed movant of his constitutional rights it cannot be said that Davis should have known that this information was reasonably likely to elicit an incriminating response from movant. *Id.* at 301, 100 S.Ct. at 1689–90. Rather, movant voluntarily waived his right to remain silent when he spontaneously made these statements which now have proven to be incriminating. " 'Volunteered statements . . . are not barred by the Fifth Amendment . . . .' " *Estelle v. Smith*, —— U.S. ——, ——, 101 S.Ct. 1866, 1876, 68 L.Ed.2d 359 (1981), *quoting Miranda v. Arizona*, 384 U.S. at 478, 86 S.Ct. at 1630. I will not suppress movant's March 5, 1981 post-arrest statements.[2]

### B. The March 6, 1981 pre-bail hearing statement

■ Before the bail hearing, in the courthouse basement, movant initiated a conversation with Davis and asked, "was [he] going to arrest [movant] for that stuff." Transcript of Suppression Hearing at 15. Davis said "yes," *id.*; movant responded, "Well, how can you do that when the stuff I gave you . . . wasn't anything." *Id.*

This, too, was a volunteered statement. It is immaterial that movant remained under the mistaken "impression," *see id.* at 62, that he was being charged with selling cocaine since he has not demonstrated that this statement resulted from interrogation.[3] Nor has he shown that the Government intentionally misled him as to the crime with which he was charged in order "to evoke an incriminating response . . . ." *Rhode Island v. Innis*, 446 U.S. at 301, 100 S.Ct. at 1690. *Cf. Miranda v. Arizona*, 384 U.S. at 436, 86 S.Ct. at 1602 (discussion of "reverse line-up" in which a defendant would be identified by coached witnesses as the perpetrator of a fictitious crime, with the object of inducing him to confess to the actual crime of which he was suspected in order to escape the false accusations). Accordingly I will not suppress the March 6, 1981 pre-bail hearing statement.[4]

### C. The March 6, 1981 bail hearing statement

At the bail hearing, movant stated:

Well, the only thing that I wanted to say [was] that it wasn't no cocaine. I had the two bottles that I bought from a head store right there, right there by City Hall. $5.00 a bottle. They call it coco-leaf and coco-snow. They sell it there, right there, right across the street from City Hall at the head store right there. That's all it was. And, I have the two bottles as proof. Plus, they know me in the store.

Transcript of Bail Hearing at 6. Before he uttered this incriminating statement, he had been cautioned that, "if you talk about this case, it's in your own risk." *Id.* Furthermore, the magistrate had earlier assert-

---

**2.** I therefore need not decide whether movant understood and waived his *Miranda* rights. *See Edwards v. Arizona*, —— U.S. ——, ——, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981) ("Absent . . . interrogation . . . there . . . [is] no occasion to determine whether there ha[s] been a valid waiver."); *Rhode Island v. Innis*, 446 U.S. at 298 n.2, 100 S.Ct. at 1688 n.2.

**3.** The Government does not dispute that movant was in custody when he made this statement.

**4.** Movant contends that this statement is inadmissible on statutory grounds because his arraignment occurred more than six hours after his arrest. 18 U.S.C. § 3501. However, § 3501 is inapplicable here since I concluded, *supra*, that movant was not subjected to interrogation. *Id.* at § 3501(d). *E. g., United States v. Diezel*, 608 F.2d 204, 207 (5th Cir. 1979).

ed that, "[y]ou have the absolute right to remain silent as to these charges because anything you say as to them at this hearing can be used against you at a later time." *Id.* at 4.

Movant contends that because counsel was not present when he made this statement, his sixth amendment right to counsel was violated. This amendment gave movant a right to counsel at this critical stage of the criminal proceedings. *United States v. Melanson,* No. 80–1445, slip op. at 7 & n.4 (1st Cir. 1981); *Government of Canal Zone v. Peach,* 602 F.2d 101 (5th Cir. 1979), *cert. denied,* 444 U.S. 952, 100 S.Ct. 426, 62 L.Ed.2d 322 (1980). *See* Fed.R. Crim.P. 44(a); *see generally Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). *But cf. United States v. Hooker,* 418 F.Supp. 476 (M.D.Pa.), *aff'd mem.,* 547 F.2d 1165 (3d Cir. 1976), *cert. denied,* 430 U.S. 950, 97 S.Ct. 1591, 51 L.Ed.2d 799 (1977) (bail reduction hearing is not a critical stage; however, the absence of counsel did not prejudice defendant). Therefore, statements obtained from him that resulted from the Government's failure to honor this right to counsel must be suppressed. *United States v. Melanson,* slip op. at 11. *See United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980).

At the bail hearing, movant was never informed of his right to counsel. Furthermore, he was charged with an unusual crime. *See, e. g.,* Transcript of Bail Hearing at 3 (statement by Assistant United States Attorney that defendants were being charged under "a fairly unusual legal theory"). Although the DEA agent[5] and the Assistant United States Attorney[6] ex-

plained the theory of the Government's case *to the magistrate,* both synopses were couched in legal terminology which was not comprehensible to an ordinary layperson. Significantly, the *magistrate* never clearly explained to movant the nature of the crime for which he was charged. Thus, movant did not know that his remarks could harm his position. *See* Transcript of Suppression Hearing at 62–64. Rather, he reasonably believed that his volunteered statements would be exculpatory.[7]

In light of these unusual circumstances, it was quite foreseeable that movant would try to explain his side of the story at this judicial proceeding. The Government, then, was responsible for creating a situation which they should have known was "likely to induce," *United States v. Henry,* 447 U.S. at 274, 100 S.Ct. at 2189, this uncounselled layperson to make incriminating statements. *See id.* at 271, 100 S.Ct. at 2187 (the government agent "must have known," under the circumstances, that his conduct "likely would lead" to incriminating information). Thus there was an impermissible interference with movant's right to the assistance of counsel. I will therefore suppress this statement of a confused, uncounselled defendant who was oblivious to his sixth amendment right to counsel. *Cf. United States v. Melanson,* slip op. at 13 (no interrogation; Government did not fail to honor defendant's right to counsel at bail hearing because, *inter alia,* defendant "had been advised that he had a right to counsel . . . [and defendant] knew that the remarks in

---

**5.** Agent Dorsey stated that "[the defendants] attempted to sell Mr. Davis a substance they purported to be cocaine, however, it was not cocaine." Transcript of Bail Hearing at 2.

**6.** Assistant United States Attorney Welsh stated that "[t]here have been cases, particularly one before Judge Cahn this past fall, where there has been charged a conspiracy to defraud the government when a group of defendants has sold what they represented to be a controlled substance, which, in fact, was not. It may be a fairly unusual legal theory, but that is the theory under which they were arrested. It

would be a conspiracy to defraud the government under Section 371 of Title 18." *Id.* at 3.

**7.** Immediately after the Assistant United States Attorney completed his explanation of the legal theory to the magistrate, movant attempted to give his side of the story to "refute" Mr. Welsh's version. Transcript of Bail Hearing at 3. Of course, had movant understood Mr. Welsh's statement, he perhaps would not have been so quick to explain that the white powder was not cocaine.

question could only harm his own position . . . ."). [8]

### III. Conclusion

I will deny movant's motions to suppress his March 5, 1981 post-arrest statements and his March 6, 1981 pre-bail hearing statements. I will grant movant's motion to suppress his March 6, 1981 bail hearing statements.

8. Movant also argues that this inculpatory statement should be suppressed since it was obtained in violation of his fifth amendment rights. In light of my holding with respect to the *sixth amendment*, I need not decide the fifth amendment issue. However, in *United States v. Dohm*, 618 F.2d 1169 (5th Cir. 1980) (*en banc*), the defendant made inculpatory statements at a bail hearing after the magistrate gave the misleading and confusing advice that, " 'the law says that the testimony here really should be used against you at future proceedings but I don't know how it can be done. Technically, they won't use it, but then they're here listening and there is a Government attorney and Government agent so—I do this because you don't have an attorney with you and we try to advise you and so on.' " *Id.* at 1175. The defendant was thus not adequately warned of the consequences of anything he might say. The Fifth Circuit stated that the "magistrate failed to accurately advise [defendant] of his *Miranda* rights [and it therefore held] that [defendant] did not knowingly and intelligently waive his fifth amendment right to avoid self-incrimination." *Id.*