**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Luis Lazaro BORREGO and Jose O.
Paulet, Defendants–Appellants.**

**No. 88–5817.**

United States Court of Appeals,
Eleventh Circuit.

Oct. 10, 1989.

Reemberto Diaz, Hialeah, Fla., (Court appointed), for Jose O. Paulet.

Victor Martinez, Asst. Federal Public Defender, Bruce Keesler, Ft. Lauderdale, Fla., for Luis Lazaro Borrego.

Dexter W. Lehtinen, U.S. Atty., Frank H. Tamen, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before ANDERSON and COX, Circuit Judges, and SHOOB *, District Judge.

SHOOB, District Judge:

Appellants Luis Lazaro Borrego and Jose Paulet challenge their convictions for conspiracy to possess with intent to distribute, possession with intent to distribute, and conspiracy to import more than one hundred kilograms of marijuana. Appellants contend that the district court erred when it denied their motion for acquittal based on the *Posse Comitatus* Act, 18 U.S.C. § 1385 (1984). We find that appellants waived their *Posse Comitatus* Act claims when they did not file an appropriate pre-trial motion and, therefore, we affirm their convictions.

BACKGROUND

On April 7, 1987, the U.S.S. *Gemini* was assisting the United States Coast Guard in law enforcement operations near Cay Sal Bank in the Bahamas. The *Gemini* is a one hundred and forty foot hydrofoil missile ship belonging to the United States Navy. The ship carries eight surface-to-surface missiles and travels at speeds in excess of forty knots (forty-eight miles per hour). The *Gemini* routinely conducts law enforcement operations in conjunction with the Coast Guard. On such occasions, one Coast Guard officer and three enlisted petty officers join the normal Navy crew aboard the *Gemini*.

At approximately ten o'clock at night on April 7, 1987, the *Gemini* received a radio message from the Coast Guard cutter *Cape Gull*. According to the message, the *Cape Gull* needed help in its pursuit of a higher speed vessel located about ten miles away from the *Cape Gull*. The captain of the *Gemini* located the vessel on his radar screen and followed the vessel until the *Gemini* was close enough to illuminate the vessel with its searchlight. The vessel, running without navigation lights, was a white twin-engine outboard motorboat with two people on board.

The Coast Guard officers aboard the *Gemini* observed several bales stored under a loose tarpaulin at the bow section of the twin-engine vessel. On that basis, the Coast Guard officers determined that it would be necessary to board the vessel for law enforcement action. The captain of the *Gemini* quickly transformed his ship into a Coast Guard vessel: he hoisted the Coast Guard ensign in place of his American flag; he illuminated blue police lights on the deck; and he sounded multiple blasts on the ship's whistle.

Using the loudhailer on the *Gemini*, the Coast Guard officers ordered the twin-engine vessel to stop for boarding. Despite repeated requests, the vessel refused to stop and made several sharp turns at high speeds in an apparent effort to escape. As the *Gemini* continued its pursuit of the vessel, the Coast Guard officers observed one of the people aboard the vessel taking the bales from under the tarpaulin and throwing them into the water. After twenty to thirty minutes, the *Gemini* overtook and cut in front of the twin-engine vessel. The vessel was forced to stop by the wake from the *Gemini* and a law enforcement boarding was conducted by the Coast

* Honorable Marvin H. Shoob, U.S. District Judge for the Northern District of Georgia, sitting by designation.

Guard officers. Marijuana residue was found on the deck of the ship and appellants were arrested.

After the Coast Guard officers arrested appellants, the *Cape Gull* and the *Gemini* returned to the area where the bales had been ditched. Using the sophisticated navigational system aboard the *Gemini*, the ship's captain had recorded the exact location where each bale was thrown overboard. Sixty bales were recovered, with a total weight of approximately fifteen hundred pounds. There is no doubt that the *Gemini* contributed immensely to the arrest of appellants and the seizure of their contraband.

On April 15, 1987, the United States Grand Jury for the Southern District of Florida indicted appellants for conspiracy to possess with intent to distribute more than one thousand kilograms of marijuana, in violation of 21 U.S.C. § 955c (1986); possession with intent to distribute more than one thousand kilograms of marijuana, in violation of 21 U.S.C. § 955a(a) (1986); and conspiracy to import into the United States more than one thousand kilograms of marijuana, in violation of 21 U.S.C. § 963 (1986). Prior to trial, the charges were reduced to reflect an amount of marijuana in excess of one hundred kilograms. Appellants subsequently were tried and convicted on all three counts.

## DISCUSSION

At the conclusion of the government's case at trial, appellants filed a motion for acquittal claiming that their arrests violated the *Posse Comitatus* Act. The Act states:

> Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.

18 U.S.C. § 1385 (1984). Appellants contend that, while the Act does not expressly apply to the Navy, the policies underlying the Act regulate the Navy. *See, e.g., United States v. Walden,* 490 F.2d 372 (4th Cir.), *cert. denied,* 416 U.S. 983, 94 S.Ct. 2385, 40 L.Ed.2d 760 (1974). We need not reach this question, however, because appellants' claims are barred based on our recent decision in *United States v. Ahumedo–Avendano,* 872 F.2d 367 (11th Cir.1989).

In *Ahumedo–Avendano* this court held that failure to raise prior to trial defenses based on the *Posse Comitatus* Act constituted waiver under Rule 12(b) of the Federal Rules of Criminal Procedure. The court stated that "appellants were aware that naval forces were used to effect their arrest; they therefore could have made their objection prior to trial." *Id.* at 372. The same reasoning applies in this case. We do not credit appellants' claim that they were not aware of the Navy's role in their arrest until after presentation of the government's case. We also reject appellants' claim that their challenge is timely because it was presented as a motion for acquittal rather than as a motion to dismiss the indictment.[1]

## CONCLUSION

Because appellants waived their claims under the *Posse Comitatus* Act when they failed to file an appropriate pre-trial motion, the judgment of the district court is AFFIRMED.

---

1. Although we decline to address the issue of whether the prohibitions of the *Posse Comitatus* Act apply to the United States Navy, appellants would be unlikely to prevail even if we held that the Act did apply. The arrests and seizures in this case clearly were authorized by Congress under 10 U.S.C. § 379 (1986). The court does not believe, as appellants suggest, that Congress intended the government to obtain prior approval every time the Navy assists the Coast Guard in drug interdiction efforts.