**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Leonardo MENDOZA–CECELIA, Terry**
**Lee Greenberg, Hector Favio Marin–**
**Hernandez, Defendants–Appellants.**

**No. 90–5815.**

United States Court of Appeals,
Eleventh Circuit.

June 24, 1992.

Mario S. Cano, Coral Gables, Fla., for Mendoza–Cecelia.

Henry M. Bugay, Miami, Fla., for Greenberg.

Hector L. Flores, Alison Marie Igoe, Asst. Federal Public Defenders, Miami, Fla., for Marin–Hernandez.

Dexter W. Lehtinen, U.S. Atty., Miami, Fla., Lynn D. Rosenthal, Linda Collins Hertz, Carol E. Herman, Asst. U.S. Attys., Ft. Lauderdale, Fla., for U.S.

Before HATCHETT, Circuit Judge, JOHNSON * and HENDERSON, Senior Circuit Judges.

JOHNSON, Senior Circuit Judge:

Defendants-appellants Terry Greenberg ("Greenberg"), Hector Favio Marin–Hernandez ("Marin–Hernandez") and Leonardo Mendoza–Cecelia ("Mendoza–Cecelia") appeal their convictions on charges arising from trafficking in marijuana. Greenberg also appeals his sentence. For the reasons which follow, we affirm appellants' convictions and Greenberg's sentence.

## I. STATEMENT OF THE CASE

On November 19, 1988, Greenberg, Marin–Hernandez, Mendoza–Cecelia and three others left Santa Maria, Colombia, aboard the Apache III, a 37–foot fishing vessel of United States registry. The vessel was laden with approximately 6,500 pounds of marijuana and was destined for Key West, Florida. After extensive surveillance, a detachment of United States Coast Guard officers aboard a United States Navy vessel detained the crew of Apache III within several miles of the Grand Cayman Islands. The Coast Guard quickly discovered the marijuana and arrested the crew. The crew was held on the Navy vessel and questioned the following day. Greenberg subsequently made incriminating statements on separate occasions to a Coast Guard officer, to a Customs official and to a magistrate judge.

On December 6, 1988, the six crew members were indicted for possession with intent to distribute marijuana, in violation of 46 U.S.C.A. §§ 1903(a) and (g) (West Supp. 1992) and 18 U.S.C.A. § 2 (West 1969) (Count I), and for conspiracy to distribute marijuana, in violation of 46 U.S.C.A. §§ 1903(j) and (g) (West Supp.1992) (Count II). On June 29, 1990, a jury convicted Greenberg and Mendoza–Cecelia on both counts of the indictment and Marin–Hernandez on Count II only.[1] Greenberg re-

---

\* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

1. Codefendants Robert Paul Souza, Jairo Dominguez, and Alvaro Dario Barrero–Perez entered guilty pleas prior to the commencement of trial.

ceived two concurrent sentences of 365 months imprisonment and a five-year term of supervised release; Mendoza–Cecelia received two concurrent sentences of 121 months imprisonment and a five-year term of supervised release; Marin–Hernandez was sentenced to a 210–month term of imprisonment and a five-year term of supervised release.

## II. ANALYSIS

Appellants raise the following claims on appeal: (1) the government denied Greenberg his right to counsel as guaranteed by the Sixth Amendment and as recognized under the Fifth Amendment in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); (2) an eighteen month delay prior to the commencement of trial violated Greenberg's right to a speedy trial under both the Speedy Trial Act and the Sixth Amendment; (3) the government's violation of the Posse Comitatus Act required dismissal of the indictment; (4) the district court committed reversible error by refusing to issue an instruction to the jury that incorporated Greenberg's defense theory; (5) the district court erroneously sentenced Greenberg as a career offender; (6) the proffered evidence was insufficient to convict Marin–Hernandez and Mendoza–Cecelia; (7) the district court's failure to sever Mendoza–Cecelia from the trial deprived him of his Sixth Amendment right of confrontation. We address each of these contentions in turn.

### A. *Motion to Suppress*

Greenberg made incriminating statements during interrogation by law enforcement personnel and in his initial appearance before a magistrate judge. He argues that his two inculpatory statements to law officers were made subsequent to his equivocal invocation of his Fifth Amendment right to counsel and therefore were obtained in violation of the *Miranda–Edwards* doctrine. *See id., Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Greenberg cites the Sixth Amendment in likewise asserting

that the magistrate judge's failure to provide him with the assistance of counsel during his initial appearance justified suppression of his admission of guilt; alternatively, he argues that the illegality of his two prior statements rendered his statement before the magistrate judge inadmissible as "fruit of the poisonous tree."

### 1. *Statements to Interrogating Officers*

The Coast Guard apprised Greenberg of his *Miranda* rights upon arresting him on the Apache III. Greenberg was then brought to the Navy vessel U.S.S. Stump. The next day, Coast Guard officers read Greenberg his *Miranda* rights before removing him to another part of the vessel for interrogation. At the beginning of this session, Greenberg stated, "I don't know if I need a lawyer—maybe I should have one, but I don't know if it would do me any good at this point." The interrogating officers continued their questioning without responding to Greenberg's statement. Greenberg subsequently agreed to make both a written and videotaped confession. Later in the United States, Greenberg made an incriminating statement during interrogation by Customs Agent Robert Abramson.

The district court found that Greenberg's comment during the first interrogation session was ambiguous enough not "to cause law enforcement officers to pause or inquire further." Greenberg disagrees, contending that his comment constituted an equivocal request for counsel sufficient to preclude all further questions except those directed to ascertaining whether he indeed desired counsel. This Court reviews *de novo* the lower court's interpretation of the applicable legal standard. *See United States v. Alexander*, 835 F.2d 1406, 1408 (11th Cir.1988).

 Once a suspect makes a request for an attorney, all questioning must cease and may not resume until an attorney is present, unless the suspect initiates an exchange with the authorities and knowingly and intelligently waives the right that he

had invoked. *Minnick v. Mississippi,* ——
U.S. ——, 111 S.Ct. 486, 112 L.Ed.2d 489
(1990); *Smith v. Illinois,* 469 U.S. 91, 95,
105 S.Ct. 490, 492–93, 83 L.Ed.2d 488
(1984); *Edwards v. Arizona,* 451 U.S. 477,
101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). This
"rigid prophylactic rule," *Smith,* 469 U.S.
at 95, 105 S.Ct. at 492–93, is triggered by
both explicit and equivocal requests for
counsel:

> When a [suspect] makes an equivocal
> request for an attorney during a custodi-
> al interrogation, 'the scope of that inter-
> rogation is immediately narrowed to one
> subject and one subject only. *Further
> questioning thereafter must be limited
> to clarifying that request* until it is clari-
> fied.' Any statement taken by the state
> after the equivocal request for counsel is
> made, but before it is clarified as an
> effective waiver of counsel, violates *Mi-
> randa.*

*Owen v. Alabama,* 849 F.2d 536, 539 (11th
Cir.1988) (quoting *Thompson v. Wain-
wright,* 601 F.2d 768, 771 (5th Cir.1979)).

▮ The threshold inquiry is therefore
whether Greenberg's statement to the in-
terrogating officers constitutes an equivo-
cal request for an attorney. The *Miranda*
Court defined broad parameters for finding
a request for counsel: the accused invokes
the right by "indicat[ing] in any manner
and at any stage of the process that he
wishes to consult with an attorney before
speaking." *Miranda v. Arizona,* 384 U.S.
436, 444–45, 86 S.Ct. 1602, 1612–13, 16
L.Ed.2d 694 (1966). This Circuit has re-
cently defined a qualifying "equivocal re-
quest" as "an ambiguous statement, either
in the form of an assertion or a question,
communicating a *possible desire* to exer-
cise [the] right to have an attorney present
during questioning." *Towne v. Dugger,*
899 F.2d 1104, 1109 (11th Cir.1990) (empha-
sis added). In *Towne,* the suspect during
interrogation did no more than make the
bare inquiry, "officer, what do you think
about whether I should get a lawyer?" *Id.*
at 1107. The district court held that "a
common sense interpretation of Towne's

question mandated a finding that he was
not actually requesting counsel." *Id.* The
*Towne* court reversed, finding that defen-
dant had sufficiently conveyed to the inter-
rogating officer that he was "contemplat-
ing exercising his right to have an attorney
present." *Id.* at 1109. Because the officer
did not attempt to clarify or discuss defen-
dant's right to counsel, the court found a
violation of *Miranda. Id.; see also United
States v. Cherry,* 733 F.2d 1124 (5th Cir.
1984) (defendant made equivocal request
when he said, "Maybe I should talk to an
attorney before I make a further state-
ment," and then later asked the officer,
"Why should I not get an attorney?");
*United States v. Fouche,* 833 F.2d 1284
(9th Cir.1987), *cert. denied,* 486 U.S. 1017,
108 S.Ct. 1756, 100 L.Ed.2d 218 (1988) (de-
fendant made equivocal request when he
first asked to be allowed to call an attor-
ney, but then instead called his wife for
advice and later asked the officer, "What
should I do?").[2]

Greenberg's statement to the interrogat-
ing officials—"I don't know if I need a
lawyer, maybe I should have one, but I
don't know if it would do me any good at
this point"—clearly reveals that he was
"contemplating exercising his right to have
an attorney present." *Towne,* 899 F.2d at
1109. Having indicated a "possible desire"
for an attorney, *see id.,* Greenberg made a
qualifying equivocal indication.

▮ The prophylactic reach of *Mi-
randa* required the interrogating officer to
clarify immediately Greenberg's equivocal
statement: "where an accused gives am-
biguous, vague, indefinite, or indecisive sig-
nals," the interrogating officer must "fol-
low[ ]up questioning to clarify his or her
wishes." *Towne* at 1109–10. Because the
officer instead continued his questioning,
the confession was obtained in violation of
Greenberg's *Miranda* rights. *See Canna-
dy v. Dugger,* 931 F.2d 752, 755 (11th Cir.
1991); *Owen,* 849 F.2d at 539.

**2.** The *Towne* court discussed *Cherry* and *Fouche*
at length and adopted their findings and analy-

ses. *See Towne,* 899 F.2d at 1109.

Greenberg's next inculpatory statement was elicited during questioning by the Customs official. Although Greenberg again waived his *Miranda* rights, counsel still had not been made available to him. When an accused remains without the benefit of counsel, the accused's earlier invocation bars further interrogation unless the accused "himself initiates further communication, exchanges, or conversations with police." *Minnick*, 111 S.Ct. at 489 (quoting *Edwards*, 451 U.S. at 484–85, 101 S.Ct. at 1884–85); *see United States v. Gomez*, 927 F.2d 1530, 1539 (11th Cir.1991). The Customs official had initiated the interrogation session; accordingly, the district court should have suppressed this second statement.

### 2. *Statement to Magistrate Judge*

Greenberg made his third admission of guilt to a magistrate judge during his initial appearance in this case. *See* Fed. R.Crim.P. 5. Greenberg argues that the district court should have suppressed this statement either on the grounds that it was obtained in violation of his Sixth Amendment right to counsel or because the improperly obtained prior statements tainted his final admission of guilt. We disagree.

The Sixth Amendment right to counsel serves "to assure aid at trial," *United States v. Gouveia*, 467 U.S. 180, 188, 104 S.Ct. 2292, 2297–98, 81 L.Ed.2d 146 (1984), and therefore attaches at the commencement of adversary judicial criminal proceedings. *See McNeil v. Wisconsin*, — U.S. —, 111 S.Ct. 2204, 2208–09, 115 L.Ed.2d 158 (1991); *see generally, Kirby v. Illinois*, 406 U.S. 682, 688–89, 92 S.Ct. 1877, 1881–82, 32 L.Ed.2d 411 (1972). An accused's right to counsel extends to those "critical" pretrial proceedings in which "the accused is confronted, just as at trial, by the procedural system, or by his expert adversary, or by both ... in a situation where the results of the confrontation might well settle the accused's fate and reduce the trial itself to a mere formality." *Gouveia*, 467 U.S. at 189, 104 S.Ct. at 2298 (citations omitted). Greenberg's initial appearance before a magistrate judge pursuant to Rule 5 of the Federal Rules of Criminal Procedure is not such a "critical proceeding." *See United States v. Dohm*, 597 F.2d 535, 543 (5th Cir.1979), *reversed on other grounds, United States v. Dohm*, 618 F.2d 1169 (5th Cir.1980) (en banc); *see also United States v. Perez*, 776 F.2d 797, 800 (9th Cir.1985) (an initial appearance at which indictment is read, name of defendant is asked, defendant apprised of *Miranda* rights, and counsel appointed not a "critical stage").

The initial appearance is largely administrative. In Greenberg's case, the court read the charges, ascertained his name, recited his *Miranda* rights, appointed counsel and set bail. Although the court in the initial appearance must consider the weight of the evidence against the defendant as one of many factors in setting bail,[3] the bail hearing is not a trial on the merits in which the guilt of the accused is adjudicated. *United States v. Dohm*, 618 F.2d 1169, 1174 (5th Cir.1980) (en banc). The defendant in seeking bail is not required to

**3.** Section 3142(g) of Title 18, United States Code (West Supp.1992) sets forth criteria for determining whether there are conditions for release, short of imprisonment, that will reasonably assure the appearance of the defendant at trial. Section 3142(g) states in relevant part that the judicial officer shall take into account:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release....

*Id.*

reveal the facts of his case. *Id.* Greenberg's bail hearing was no exception. Prior to and during the bail hearing, Greenberg was repeatedly warned by the court that he had the right to remain silent and that any statement he made could be used against him. Nonetheless, without prompting, Greenberg offered an admission of guilt.[4] *See id.*[5]

Greenberg argues that his confession in any event should have been excluded from evidence as "fruit of the poisonous tree." *See Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985); *Martin v. Wainwright,* 770 F.2d 918 (11th Cir. 1985), *opinion modified in unrelated part,* 781 F.2d 185 (1986), *cert. denied,* 479 U.S. 909, 107 S.Ct. 307, 93 L.Ed.2d 281 (1986). Greenberg contends that under this doctrine, his prior confessions obtained in violation of *Miranda* "tainted" his subsequent confession and thereby rendered it inadmissible. *See Elstad,* 470 U.S. at 303–09, 105 S.Ct. at 1289–93; *Martin,* 770 F.2d at 928–29.

The "fruit of the poisonous tree" doctrine may require exclusion of a subsequent confession only if the prior confession was obtained in violation of the Fifth Amendment. *Elstad,* 470 U.S. at 306, 105 S.Ct. at 291–92; *Martin,* 770 F.2d at 928. The Fifth Amendment provides limited protection for the defendant, prohibiting "use by the prosecution in its case in chief only

of *compelled* testimony." *Elstad,* 470 U.S. at 306–07, 105 S.Ct. at 1291–92 (emphasis in original). *Miranda* affords broader protection, disallowing statements made under conditions merely *presumed* coercive. *Id.* A violation of only *Miranda*'s prophylactic procedures will therefore render inadmissible a statement otherwise voluntary within the meaning of the Fifth Amendment, *see, e.g., id.* (mere failure to administer *Miranda* warnings prior to taking statement), but will not exclude a subsequent confession under the "fruit of the poisonous tree" doctrine. *Id.; Martin,* 770 F.2d at 928.

In the instant case, Greenberg was entitled to the exclusion of his confession to the Customs official solely because the prophylactic reach of *Miranda* operated as a *per se* bar to all custodial interrogation until an attorney was provided. Since this confession was not "actually coerced," it was obtained in violation of *Miranda* but not in violation of the Fifth Amendment. Thus under the "fruit of the poisonous tree doctrine" Greenberg's second confession cannot trigger the exclusion of his final admission of guilt. *See Miller v. Dugger,* 838 F.2d 1530, 1537 (11th Cir.), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988).

Greenberg counters that his confession to the Customs official was in fact a product of coercion and thus in violation of the

**4.** The Fifth Amendment right to counsel is likewise of no avail to Greenberg in this instance. The *Miranda–Edwards* right to counsel is comprised of prophylactic measures intended to counteract inherently coercive pressures of custodial interrogation, pressures that might otherwise thwart a suspect's desire to consult counsel when dealing with the police. *See McNeil,* 111 S.Ct. at 2208; *Edwards,* 451 U.S. at 484–86, 101 S.Ct. at 1884–86; *Miranda,* 384 U.S. at 445–58, 473–74, 86 S.Ct. at 1612–13, 1627–28. Consonant with this purpose, *Miranda*'s reach is explicitly limited to "custodial interrogation," which in turn is defined as "questioning initiated by law enforcement officers." *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612. Greenberg's equivocal invocation of his right to counsel during his initial interrogation triggers continuing safeguards pertaining to questioning by law enforcement officers, not by a magistrate judge. *See generally, McNeil,* 111 S.Ct. at 2208–09.

**5.** Although Greenberg has no constitutional right to counsel at his initial appearance, Rule

.44(a) of the Federal Rules of Criminal Procedure provides that every defendant unable to retain counsel is entitled to "have counsel assigned to represent that defendant at every stage of the proceedings from initial appearance before the federal magistrate or the court through appeal, unless that defendant waives such appointment." We do not interpret this rule to mean that a court must have appointed counsel prior to even this "initial" proceeding. *Accord Perez,* 776 F.2d at 800. One of the duties of the court during this appearance is to appoint counsel. *See* Fed.R.Crim.P. 5. Moreover, as a practical matter, it is both necessary and appropriate for a court to ask at least routine background questions and to ascertain financial ability before deciding to appoint counsel. In the instant case, the lower court determined that Greenberg was entitled to appointed counsel. Greenberg, however, expressly refused the assistance of appointed counsel for the bail colloquy.

Fifth Amendment. Specifically, he argues that the Customs official threatened his family, and that this threat prompted him to make a confession. The district court rejected this allegation, finding that such a threat, if made, did not coerce Greenberg into making his confession.

We review determinations regarding the voluntariness of a confession for clear error. *United States v. Vera,* 701 F.2d 1349, 1364 (11th Cir.1983). The focus of the voluntariness inquiry is on whether the defendant was coerced by the government into making the statement: "The relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception." *Colorado v. Connelly,* 479 U.S. 157, 170, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986) (citation omitted). The district court must consider the totality of the circumstances in assessing whether police conduct was "causally related" to the confession. *Miller,* 838 F.2d at 1536. Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession. *See Colorado,* 479 U.S. at 163 n. 1, 107 S.Ct. at 520 n. 1; *Miller,* 838 F.2d at 1536; *United States v. Castaneda–Castaneda,* 729 F.2d 1360, 1362–63 (11th Cir.1984). Isolated incidents of police deception, *see Castaneda–Castaneda* 729 F.2d at 1362–63; *Frazier v. Cupp,* 394 U.S. 731, 739, 89 S.Ct. 1420, 1424–25, 22 L.Ed.2d 684 (1969), and discussions of realistic penalties for cooperative and non-cooperative defendants, *see United States v. Nash,* 910 F.2d 749, 753 (11th Cir.1990), are normally insufficient to preclude free choice.

In the instant case, Greenberg alleges that the Customs official threatened his family by stating that "if you don't cooperate with us, ten years can be a long time in jail. Anything can happen and something can happen to your family, something can happen to your mother, your father." Greenberg's subjective understanding aside, we find that the official's statement does not represent a credible threat against Greenberg's family. *See Agee v. White,* 809 F.2d 1487, 1494 (11th Cir.1987) (defendant's subjective understanding of statement irrelevant to determination of coercion). An official who encourages cooperation with the government and who informs the defendant of realistically expected penalties for cooperation and/or non-cooperation does not offer an illegal inducement. *See Nash,* 910 F.2d at 752–53. Although the Customs official also suggested deprivations that Greenberg might suffer while serving a long prison sentence, we find such speculation insufficient to deprive Greenberg of his ability to freely and voluntarily choose to make a statement. *Accord United States v. Harris,* 914 F.2d 927, 933 (7th Cir.1990).

The interrogation session was otherwise free of inducements or coercive factors. Greenberg makes no allegation of any actual promises made in return for his cooperation. The Customs official recited Greenberg his *Miranda* rights and questioned him for only forty minutes. *See Miller,* 838 F.2d at 1537; *see also Martin v. Wainwright,* 770 F.2d at 927 ("off and on" questioning over five hour period failed to render confession involuntary). We conclude that the totality of the circumstances demonstrates that the confession was voluntary.

Assuming *arguendo,* however, that the Customs official coerced his confession in violation of the Fifth Amendment, Greenberg still cannot prevail under the "fruit of the poisonous tree" doctrine. The doctrine dictates the suppression of a subsequent confession only if it was "tainted" by the coercion involved in the prior confession. *See Elledge v. Dugger,* 823 F.2d 1439, 1443 (11th Cir.1987), *opinion withdrawn in unrelated part,* 833 F.2d 250 (1987); *see also Leon v. Wainwright,* 734 F.2d 770, 772–73 (11th Cir.1984). A court determines whether a subsequent confession has been tainted by considering " 'the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators.' " *Id.; see Elstad,* 470 U.S. at 309,

105 S.Ct. at 1293. In the instant case, an entire day separated his confession before the Customs official and his admission of guilt to the magistrate. Most critically, however, Greenberg's last confession came in court before a neutral official. His dialogue with the magistrate did not resemble interrogation, and his prior confessions were not used as leverage to coerce the final admission of guilt. *See Elledge,* 823 F.2d at 1443–44; *United States v. Gresham,* 585 F.2d 103, 108 (5th Cir.1978).

■■■ Greenberg's admission of guilt to the magistrate judge was therefore properly admitted into evidence. This final inculpatory statement, together with significant circumstantial evidence (*see infra* section II(F)), constitute overwhelming evidence of guilt that renders harmless the district court's erroneous admission of the two prior confessions. *See Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1963); *Harryman v. Estelle,* 616 F.2d 870, 875 (5th Cir.) (en banc), *cert. denied,* 449 U.S. 860, 101 S.Ct. 161, 66 L.Ed.2d 76 (1980).

### B. *Speedy Trial Act*

■■■ Greenberg argues that an eighteen month interval between the return of his indictment and the commencement of his trial violated his statutory and constitutional rights to a speedy trial. This contention is without merit.

■■■ The Speedy Trial Act requires that a defendant's trial begin within 70 days "of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court, whichever date last occurs." 18 U.S.C.A. § 3161(c)(1) (1985). Certain types of pretrial delay are automatically excluded from the Act's time limits. *Id.* at § 3161(h). The Act excludes the period of delay between the filing of a motion and the conclusion of the hearing on that motion, regardless of the reasonableness of that delay. *See Henderson v. United States,* 476 U.S. 321, 326–27, 106 S.Ct. 1871, 1874–75, 90 L.Ed.2d 299 (1986);

*United States v. Davenport,* 935 F.2d 1223, 1228 (11th Cir.1991). Delays caused by motions concerning one defendant are generally also excludable for all codefendants. *See United States v. Khoury,* 901 F.2d 948, 971 (11th Cir.1990); *United States v. Vasser,* 916 F.2d 624, 626 (11th Cir.1990); *United States v. Zielie,* 734 F.2d 1447, 1454 (11th Cir.1984). Only delay occasioned by another defendant's motion that is "reasonable," however, will be applicable to a co-defendant. 18 U.S.C.A. § 3167(h)(7); *see Davenport,* 935 F.2d at 1236; *United States v. Darby,* 744 F.2d 1508, 1518–19 (11th Cir.1984). We assess whether a delay was reasonable by employing any one of three measures of reasonableness: (1) the totality of the circumstances for the delay, (2) the extent to which defendant's defense suffered prejudice, or (3) the sheer duration of the delay. *Davenport,* 935 F.2d at 1236; *Darby,* 744 F.2d at 1518–19.

In the instant case, co-appellant Marin–Hernandez and co-defendant Barrero–Perez filed their motions for severance sixty-eight days after the return of their (and Greenberg's) indictment. The district court held a hearing on the severance issue eighteen months later, on the day before commencement of the trial. Greenberg makes no attempt to demonstrate any prejudice suffered by his defense because of this delay, and our review of the record reveals no evidence that his defense was by any means encumbered. In fact, Greenberg during this period conducted an active motion practice that otherwise would have excluded at least five months from the Speedy Trial Act computation. *See* 18 U.S.C.A. § 3161(h)(1)(F) (1985). We therefore find the eighteen month period reasonable under the second aforementioned test. *Cf. United States v. DeLuna,* 763 F.2d 897, 922–23 (8th Cir.1985) (eighteen month delay excludable because attributable to pretrial motions of codefendants). Because the total number of non-excludable days is fewer than seventy, Greenberg fails to demonstrate a violation of the Speedy Trial Act.[6]

---

**6.** Having determined the eighteen month delay reasonable under the second measure of reason-

ableness, we need not evaluate whether such a delay qualifies as reasonable under the remain-

■ Greenberg's contention that the delays encountered before trial violated his constitutional right to a speedy trial is likewise without merit. The Supreme Court has articulated a four-part balancing test to determine whether there has been a violation of the Sixth Amendment: (1) the length of the delay, (2) the reason for the delay, (3) whether and how the defendant asserted his right to a speedy trial, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530–32, 92 S.Ct. 2182, 2191–93, 33 L.Ed.2d 101 (1972). If any of the first three factors does not weigh heavily against the government, the defendant must demonstrate actual prejudice from the delay. *Davenport*, 935 F.2d at 1239; *United States v. Mitchell*, 769 F.2d 1544, 1547 (11th Cir.1985). Although in the instant case the reasons for the delay do not weigh heavily against the government, *see supra* slip op. at 1476 n. 6, Greenberg makes no attempt to show actual prejudice. His claim for constitutional relief must therefore fail. *See Davenport*, 935 F.2d at 1239–40.

### C. *Posse Comitatus Act*

■ Greenberg contends that the involvement of the United States Navy in his arrest constituted a violation of the Posse Comitatus Act that warranted dismissal of the indictment.[7] The Posse Comitatus Act provides:

Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as posse comitatus or otherwise to execute the law shall be fined not more than $10,000 or imprisoned not more than two years, or both.

18 U.S.C.A. § 1385 (West 1984). The Act by its own terms places no restrictions on Navy involvement with law enforcement agencies, *accord United States v. Yunis*, 924 F.2d 1086, 1093 (D.C.Cir.1991); *Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328, 1339–40 (9th Cir.1987). Moreover, nothing in the Act's legislative history suggests its application to naval operations. *See* H.R.Rep. No. 97–71 at 4, 1981 U.S.Code Cong. & Admin.News 1781, 1786 (Navy not bound by Posse Comitatus Act).

■ Even if the Act were construed to apply to the Navy, *see United States v. Ahumedo–Avendano*, 872 F.2d 367, 372 n. 6 (11th Cir.1989) (citing in dicta circuit courts that have held that prohibitions of Act apply to Navy by implication or by executive act), the Act specifically excepts from its compass cases "expressly authorized by ... Act of Congress." 18 U.S.C.A. § 1385. The National Drug Interdiction Improvement Act of 1986 created such an exception, providing for members of the Coast Guard to be assigned to duty on board naval vessels in drug interdiction

---

ing two tests. We note, however, that aside from the approximate five months of delay otherwise excludable from Greenberg's Speedy Trial clock, the lower court was required to continue the trial three times, once because of conflicting obligations cited by Greenberg's counsel. *See* 18 U.S.C.A. § 3161(h)(8)(A); *United States v. Vasser*, 916 F.2d 624, 627 (11th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1688, 114 L.Ed.2d 82 (1991). Many additional days would also have been excluded due to the numerous motions filed by the codefendants. Thus, under the totality of the circumstances test, we cannot conclude that eighteen months was not necessary for the purposes of the continuances and for the district court to consider carefully and to rule upon both the severance motion and the many intervening motions. *See Davenport*, 935 F.2d at 1237; *Darby*, 744 F.2d at 1518–19. The mitigating circumstances of the intervening motions and continuances would also appear to render reasonable a perhaps facially unacceptable period under the test for "sheer du-

ration of the delay." *See Davenport*, 935 F.2d at 1237–38; *Darby*, 744 F.2d at 1519.

7. Greenberg also argues that the indictment should be dismissed for lack of subject matter jurisdiction. He contends that the reference to "possession with intent to distribute" in section 1903 of 46 U.S.C.A. necessarily means distribution in the United States. The statute specifically provides, however, that "[t]his section is intended to reach acts of possession, manufacture, or distribution committed outside the territorial jurisdiction of the United States." *See* 46 U.S.C.A. § 1903(h); *see also United States v. Riker*, 670 F.2d 987, 988 (11th Cir.1982) (construing same language of predecessor statute to "fairly shout[ ]" Congress' intent to reach extraterritorial acts of possession). For purposes of jurisdiction and arrest under the statute, it is sufficient that the Apache III was a vessel of United States registry. *See* 46 U.S.C.A. § 1903(c).

areas for performance of law enforcement functions. *See* 10 U.S.C.A. § 379 (West Supp.1992); *see also United States v. Borrego*, 885 F.2d 822, 824 n. 1 (11th Cir.1989) (holding in dicta that § 379 constitutes exception to Posse Comitatus Act).[8] In the case at bar, the Coast Guard did the actual boarding, arrest, interrogation, and ensuing investigation of all criminal matters. Consequently, the passive participation of the Navy in the arrest of the crew of the Apache III did not implicate the Posse Comitatus Act.[9]

### D. *Request for Jury Instruction*

Greenberg next argues that the district court committed reversible error by refusing to offer an instruction that purportedly summarized his theory of the case. His instruction stated in relevant part:

> It is the theory of the Defendant that at the time of his arrest that the vessel known as the Apache III was not subject to the jurisdiction of the United States and that he was not violating a United States law at the time of the alleged offense.... If you find that the defendant did not violate a United States law, you shall find him not guilty....

The lower court instead issued the following instruction:

> You are also instructed that a claim of failure to comply with international law in the enforcement of this chapter may be invoked solely by a foreign nation, and a failure to comply with international law shall not divest a court of jurisdiction or otherwise constitute a defense to any proceeding or prosecution.

■ Reversible error for failure to give a requested instruction exists only if: "(1) the proffered instruction was substantially correct, (2) the requested instruction was not addressed in the charge actually given, and (3) the failure to give the instruction seriously impaired the defendant's ability to present an effective defense." *United States v. De La Vega*, 913 F.2d 861, 872 (11th Cir.1990). As we have already demonstrated, *see supra* II(C) maj. op. at 1477 n. 7, Greenberg's jurisdiction argument had no basis in law. The district court on the other hand recited virtually verbatim the jurisdictional provisions relevant to the action. *See* 46 U.S.C.A. § 1903(d). The court's refusal to issue Greenberg's instruction was thus not reversible error.

### E. *Greenberg as a Career Offender*

■ A defendant whose instant offense of conviction is either a controlled substance offense or a violent felony and

**8.** Greenberg nevertheless argues that 10 U.S.C.A. § 374 (West Supp.1992) bars naval personnel from operating naval equipment for law enforcement purposes without the express authorization of the Secretary of Defense. *See id.* This section, however, must be read within the context of the entire chapter. *See United States v. Roberts*, 779 F.2d 565, 567 (9th Cir.), *cert. denied*, 479 U.S. 839, 107 S.Ct. 142, 93 L.Ed.2d 84 (1986). In particular, section 374 must be considered in light of section 379, which expressly dictates that the Secretary of Defense "provide that there be assigned on board every appropriate surface naval vessel at sea in a drug interdiction area members of the Coast Guard who are trained in law enforcement and have powers ... including the power to make arrests and to carry out searches and seizures." *Id.*

**9.** In any event, the Posse Comitatus Act provides *no basis for the proposed remedy of dismissal* of all charges. *See United States v. Yunis*, 924 F.2d 1086, 1093–94 (D.C.Cir.1991); *United States v. Cotten*, 471 F.2d 744, 749 (9th Cir.), *cert. denied*, 411 U.S. 936, 93 S.Ct. 1913, 36 L.Ed.2d 396 (1973).

Alternatively, Greenberg argues that a violation of the Act warrants application of an exclusionary rule. This Circuit has declined to fashion an exclusionary rule until such time as widespread and repeated violations of the Posse Comitatus Act demonstrate a need for such sanction. *United States v. Wolffs*, 594 F.2d 77, 85 (5th Cir.1979); *see United States v. Garcia*, 672 F.2d 1349, 1368 n. 33 (11th Cir.1982); *United States v. Hartley*, 678 F.2d 961, 978 (11th Cir.1982). Recent alleged violations of the Act have been few, *see Ahumedo–Avendano*, 872 F.2d at 372–73 (1989); *Borrego*, 885 F.2d at 824 (1989); *United States v. Bacon*, 851 F.2d 1312 (11th Cir.1988); *Hartley*, 678 F.2d at 978 (1982), and we find no basis in the present case to justify the creation of an exclusionary rule. *Accord United States v. Griley*, 814 F.2d 967, 976 (4th Cir.1987); *United States v. Hartley*, 796 F.2d 112, 115 (5th Cir.1986); *see also United States v. Roberts*, 779 F.2d 565, 568 (9th Cir.1986) (exclusionary rule not warranted for violation of Navy regulations and 10 U.S.C. §§ 371–78).

whose record reflects at least two prior convictions for either drug offenses or violent felonies is classified as a "career offender" under section 4B1.1 of the sentencing guidelines. The district court found that in light of Greenberg's prior convictions for attempted arson and armed robbery, his conviction for marijuana trafficking conferred career offender status. *See* U.S.S.G. § 4B1.1. Greenberg argues that the district court erred by declining to ascertain whether his conviction for attempted arson in fact involved physical violence. He also asserts that his 1973 armed robbery conviction is an ineligible predicate offense because it was committed over fifteen years before the instant offense of conviction. *See* U.S.S.G. § 4A1.2(e)(1). We find these arguments meritless.

Section 4B1.2(1) and Application Note 2 to section 4B1.1 designate arson as a crime of violence. Note 2 also states that qualifying predicate offenses include attempted crimes of violence. *See* U.S.S.G. § 4B1.1, Application Note 2. Further scrutiny of a prior conviction is unwarranted: "the analysis of a crime under [§ 4B1.1] should focus on the statute which defines the offense—evidence establishing the particular conduct of the defendant on the day the crime was committed does not bear on that inquiry." *United States v. Gonzalez-Lopez*, 911 F.2d 542, 547 (11th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991).

The armed robbery conviction of 1973 was also a proper predicate offense because Greenberg was incarcerated for that offense within the fifteen year period prior to the instant offense. *See* U.S.S.G. § 4A1.2(e)(1). Greenberg served a prison sentence for the armed robbery conviction until August 15, 1979.[10]

### F. *Sufficiency of the Evidence*

Appellants Marin-Hernandez and Mendoza-Cecelia claim that the evidence was insufficient to prove their knowing participation in the offense of conspiracy to possess with intent to distribute marijuana. Mendoza-Cecelia also claims that the evidence was insufficient to support his conviction for possession with intent to distribute marijuana. Both appellants assert that they were merely present on the boat and that no evidence connected them to their crimes of conviction.

We review *de novo* questions concerning the sufficiency of the evidence. *United States v. Beale*, 921 F.2d 1412, 1430 (11th Cir.1991). This Court draws all inferences in favor of the jury decision and then determines whether a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. *United States v. Garate-Vergara*, 942 F.2d 1543, 1547 (11th Cir.1991). The evidence need not exclude every reasonable hypothesis of innocence or lead solely to a conclusion of guilt. *United States v. Jones*, 913 F.2d 1552, 1557 (11th Cir.1990); *United States v. Ospina*, 823 F.2d 429, 433 (11th Cir. 1987), *cert. denied*, 485 U.S. 964, 108 S.Ct. 1232, 99 L.Ed.2d 432 (1988).

To prove a conspiracy, the government must demonstrate that an agreement existed between two or more persons to commit a crime and that the defendant knowingly and voluntarily joined or participated in the illegal venture. *See Jones*, 913 F.2d at 1557; *United States v.*

---

**10.** Greenberg also argues that the sentencing court clearly erred by refusing to give him a two-level reduction for acceptance of responsibility. The decision of the sentencing court " 'is entitled to great deference on review and should not be disturbed unless it is without foundation.' " *United States v. Ignancio Munio,* 909 F.2d 436, 439 (11th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1393, 113 L.Ed.2d 449 (1991) (quoting U.S.S.G. § 3E1.1 comment n. 5). A defendant's admission of guilt does not necessarily warrant a reduction for acceptance of responsibility. *See United States v. Spraggins,* 868 F.2d 1541, 1542 (11th Cir.1989). The determination instead turns on whether the defendant "*clearly* demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." *Id.* (quoting U.S.S.G. § 3E1.1(c)). Greenberg has not presented this Court with sufficient evidence to show that the lower court clearly erred by denying him the two-level reduction. To the contrary, the record evidence contains no indication that Greenberg has accepted responsibility for his actions. On these facts, we find firm foundation for the sentencing court's determination and therefore affirm Greenberg's sentence.

*Vera,* 701 F.2d 1349, 1357 (11th Cir.1983). The existence of an agreement may be proven by the acts and conduct of the defendants or from other circumstances. *United States v. Cross,* 928 F.2d 1030, 1042 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 594, 116 L.Ed.2d 618 (1991); *United States v. Battle,* 892 F.2d 992, 998 (11th Cir.1990). Though not sufficient to justify conviction, a defendant's mere presence at the scene of the crime represents a material and probative factor for consideration by the jury. *See United States v. McDonald,* 935 F.2d 1212, 1219 (11th Cir.1991); *Beale,* 921 F.2d at 1430.

 Conspiracy and possession cases involving narcotics-laden vessels present repetitive fact patterns warranting special consideration. *See Garate–Vergara,* 942 F.2d at 1547; *Ospina,* 823 F.2d at 433–434; *United States v. Vidal–Hungria,* 794 F.2d 1503, 1513–15 (11th Cir.1986); *United States v. Cruz–Valdez,* 773 F.2d 1541, 1546–47 (11th Cir.1985) (*en banc*), *cert. denied,* 475 U.S. 1049, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986). This Circuit has set forth the following factors for determining whether a jury may conclude that a defendant found on the vessel was merely present or was guilty of possession and conspiracy:

> (1) probable length of the voyage, (2) the size of the contraband shipment, (3) the necessarily close relationship between captain and crew, (4) the obviousness of the contraband, and (5) other factors, such as suspicious behavior or diversionary maneuvers before apprehension, attempts to flee, inculpatory statements made after apprehension, witnessed participation of the crew, and the absence of supplies or equipment necessary to the vessel's intended use.

*Garate–Vergara,* 942 F.2d at 1547; *see Ospina,* 823 F.2d at 433–34; *Vidal–Hungria,* 794 F.2d at 1513–15; *Cruz–Valdez,* 773 F.2d at 1546–47. The comparative size of the boat and contraband shipment is also probative in determining the obviousness of the contraband. *Garate–Vergara,* 942 F.2d at 1547–48; *Cruz–Valdez,* 773 F.2d at 1546. Although consideration of these factors may not be reduced to a formula, the presence of a large quantity of marijuana leaves only a "relatively light" burden on the government for showing voluntary participation by the crew. *Garate–Vergara,* 942 F.2d at 1548; *Cruz–Valdez,* 773 F.2d at 1546–47. The government may meet this burden of proof by demonstrating knowing participation through any one of the remaining factors. *Ospina,* 823 F.2d at 433; *Cruz–Valdez,* 773 F.2d at 1547.

 Marin–Hernandez and Mendoza–Cecelia were aboard a relatively small vessel (37 foot) fully loaded with ninety-seven bales of marijuana. The marijuana was in plain view and completely filled the cabin area. The only place to sleep was on top of the bales, and drinking water was located in the cabin where the marijuana was found. The immense volume of marijuana moreover produced an overwhelming odor easily detected on the decks. The boat had no other cargo and few provisions. Arresting officers found Marin–Hernandez attempting to dispose of several pieces of false identification as well as instructions for operating the Loran radio. *See Garate–Vergara,* 942 F.2d at 1547. Mendoza–Cecelia at the time of his arrest possessed papers containing beeper numbers, names and addresses. One of these beeper numbers matched a number found in the back of a Spanish Bible located in the cabin area of the vessel. The Spanish Bible, containing names and addresses from around the world, had been left behind, supporting the inference that Mendoza–Cecelia had wanted to divest himself of the Bible because of its incriminating entries. We find the foregoing evidence clearly sufficient to allow a reasonable jury to convict Mendoza–Cecelia of possession and both appellants of conspiracy.

### G. *Motion for Severance*

 Mendoza–Cecelia contends that the district court erred by denying his motion for severance because the redacted version of Greenberg's post-arrest statements violated his right of confrontation under the Sixth Amendment. He argues that despite the fact that all plural refer-

ences were changed to the singular, a reference within the statement to a "crew of six" necessarily implicated him in violation of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

The Supreme Court in *Bruton* held that the admission of a "powerfully incriminating extrajudicial statement[ ]" of a codefendant violates a defendant's Sixth Amendment right of confrontation even when the court instructs the jury to consider the confession only against the codefendant. *Id.* at 135–36, 88 S.Ct. at 1627–28. A statement is powerfully incriminating if it "expressly implicat[es]" the defendant. *Id.* at 124 n. 1, 88 S.Ct. at 1621 n. 1; *see Richardson v. Marsh*, 481 U.S. 200, 208, 107 S.Ct. 1702, 1707–08, 95 L.Ed.2d 176 (1987). Consequently, a confession redacted to substitute a neutral pronoun or other general word for the name of a defendant does not violate *Bruton* unless it compels a "direct implication of the complaining defendant." *United States v. Vasquez*, 874 F.2d 1515, 1518 (11th Cir.1989), *cert. denied*, 493 U.S. 1046, 110 S.Ct. 845, 107 L.Ed.2d 840 (1990); *see Beale*, 921 F.2d at 1425; *United States v. Satterfield*, 743 F.2d 827, 849 (11th Cir.1984), *cert. denied*, 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985). If a confession so redacted describes a codefendant's participation in the crime, it remains clearly inculpatory if the jury would logically conclude from the other evidence in the record that the neutral pronoun or general word indeed represented the codefendant. *See United States v. Hemelryck*, 945 F.2d 1493, 1502 (11th Cir.1991); *United States v. Petit*, 841 F.2d 1546, 1556 (11th Cir.), *cert. denied*, 487 U.S. 1237, 108 S.Ct. 2906, 101 L.Ed.2d 938 (1988); *United States v. Bennett*, 848 F.2d 1134, 1142 (11th Cir.1988).

The lower court in the instant case changed all uses of "we" to "I" and deleted all inculpatory references to the crew.[11] The redacted confession thus read as a first-person narrative of Greenberg's activities. The single reference to the crew—"I had a crew of six"—did not describe the involvement of the crew in the smuggling operation. Although the jury was logically compelled to include Mendoza–Cecelia as one of the "crew of six," the confession did not directly implicate the crew in the conspiracy. Therefore, unlike the redacted confessions in *Hemelryck*, *Bennett*, and *Petit*, the inference from Greenberg's confession that Mendoza–Cecelia was uninvolved in the criminal activity was just as likely as the inference that he was a voluntary participant in the conspiracy.[12] Because the statement at most only indirectly implicated Mendoza–Cecilia, the district court properly denied Mendoza–Cecelia's motion for severance.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM appellants' convictions and sentences.

---

11. The district court deleted Greenberg's reference to his "recruiting" of the crew members and the following inculpatory passage: "The other crew members were there to help me out in the maintenance of the boat. They all knew what we were doing."

12. The former inference is consistent with Mendoza–Cecelia's defense that he boarded the boat without knowledge of the contraband and that he never had a stake in the smuggling operation.