JAY, J.,
concurring in part and dissenting in part.
After reviewing the video and transcript of Pierce’s interrogation, I believe that Pierce’s Miranda waiver was knowingly and voluntarily made, and, therefore, I would affirm the trial court’s denial of his motion to suppress.
First, “[a] trial court’s ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness, and the reviewing court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.” Pagan v. State, 830 So.2d 792, 806 (Fla. 2002). Thus, we are required to evaluate the exchanges between Pierce and Detective Wray in a manner that is “most favorable” to affirming the trial court’s decision that Pierce voluntarily waived his- Miranda rights. Id.
Second, in our evaluation of Pierce’s interrogation, we should “ ‘make every effort to eliminate the distorting effects of hindsight’” bias and in doing so, analyze Detective Wray’s “performance from [his] perspective at the relevant time.” Martin v. State, 107 So.3d 281, 309 (Fla. 2012) (citations omitted). As Martin recognized, “[t]he fact that select statements from law enforcement officers may later be taken out of context and construed as misrepre-sentative, while relevant, is but one factor in a larger, totality of the circumstances evaluation of the interview.” Id. at 310.
Third, as referenced by the majority, “[a] valid'waiver of Miranda rights must ... be knowingly and intelligently made.” United States v. Gaddy, 894 F.2d 1307, 1312 (11th Cir. 1990) (citation omitted). “Whether a waiver is knowing and intelligent is determined by the particular facts and circumstances of the case, ‘including the background, experience, and conduct of the accused’ ” Id. (citation omitted) (emphasis added). “The relevant question is not whether the ‘criminal suspect [knew] and [understood] every possible consequence of a waiver ,.but rather whether the ‘suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time.’ ” Garner v. Mitchell, 557 F.3d 257, 261 (6th Cir. 2009) (en banc) (quoting Colorado v. Spring, 479 U.S. 564, 574, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987)).
In accord with these principles, I believe that Pierce’s Miranda waiver was the product of his own “free and deliberate choice” and was not related to any purported coercion or deception by Detective Wray. Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). Specifically, Detective Wray’s statements to Pierce were not coercive, and based on the video, Pierce’s interview was conducted in a civil and non-confrontational manner. Also, there is no evidence that Pierce was deceived ,by the purported misstatements highlighted by the majority or that Pierce detrimentally relied upon those representations. See United States v. Thompson, 422 F.3d 1285, 1295-96 (11th Cir. 2005) (“Sufficiently coercive conduct normally involves subjecting the accused to an ex- *1224 haustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession.” (quoting United States v. Mendoza-Cecelia, 963 F.2d 1467, 1475 (11th Cir.1992) (emphasis added))); United States v. Small, 2013 WL 1400610, *5 (M.D. Fla. Feb. 11, 2013).
Moreover, as to Pierce’s “awareness of the nature and consequences of the rights” that he waived, it is undisputed that the Miranda rights were accurately read to Pierce and, subsequently, Pierce voluntarily signed the proffered Miranda waiver. See Thomas v. State, 894 So.2d 126, 136 (“Although a written statement is neither necessary nor by itself sufficient to establish waiver, it is strong proof that a waiver is valid.”). While Detective Wray’s statement that “it can’t hurt you to talk with me” was not ideal, the statement was an apparent attempt to communicate that cooperating would be to Pierce’s benefit—a permissible interrogation strategy. See United States v. Graham, 323 Fed.Appx. 793, 800 (11th Cir. 2009). Because the statement was made shortly after a full and accurate recitation of Pierce’s Miranda rights, common sense would suggest that Pierce would have asked about the conflict if he was confused about the discrepancy or, conversely, deferred signing the waiver until he was provided a clarification by Detective Wray. Neither event occurred.
From this record, the majority concludes that Pierce’s waiver was “procured by misstatement”—with a primary emphasis on the statement that “it can’t hurt you to talk with me.” However, there is no evidence that Pierce’s decision to speak with Detective Wray was induced by Wray’s statement that talking to Wray would not hurt Pierce. To the contrary, Pierce repeatedly confirmed that he wanted to speak with Detective Wray about Pierce’s version of what occurred. By presuming a causal nexus between Pierce’s decision to talk and Wray’s purported misstatement—without evidence that Pierce was deceived, deluded, or misled by the statement—the majority has gone beyond what Miranda requires. See State v. Pitts, 936 So.2d 1111, 1133 (Fla. 2d DCA 2006) (“[Njothing in the conduct of the police here shows that Pitts’ waiver resulted from a coerced choice. The State has met its burden of establishing the voluntariness of the waiver.” (emphasis added)).
Similar to this case, the defendant in Graham argued that his post-arrest statements were involuntary because an interrogating officer told him that cooperating with the police would be to his benefit. 323 Fed.Appx. at 794. Specifically, the interviewing detective testified that he had an “understanding” with Graham that if Graham cooperated and provided the police with information, “⅞ certainly wouldn’t hurt him.” Id. at 796 (emphasis added). In affirming the denial of Graham’s motion to suppress, the Eleventh Circuit held that the detective’s statements to Graham “merely confirmed what Graham already understood, namely, that he might be able to benefit in the future if he cooperated.” Id. at 800. In doing so, the court recognized that “ ‘[n]o public policy should castigate a confession of crime merely because it may have been prompted by the hope that cooperation’ ” might increase the chances of a less severe sentence. Id. at 801 (quoting United States v. Springer, 460 F.2d 1344, 1347 (7th Cir. 1972)).
Like the defendant’s disclosures in Graham, Pierce’s “statements were not the product of deception or coercion, but were ... the product of a voluntary and calculated decision to cooperate” because Pierce apparently believed it was in his self-interest to do so. Id. As a result, I would find a valid waiver of Pierce’s Miranda rights. See United States v. Sweetenburg, 186 Fed.Appx. 879, 883 (11th Cir. 2006) (“De *1225 fendant contends next that his Miranda waiver—given during the initial phase of his post-arrest interview, where he was asked about the offense for which he was arrested—was vitiated during the second, cooperation phase when agents indicated that, if Defendant helped law enforcement, his statements would be used only for his benefit. We disagree.”) (emphasis added); United States v. Jaswal, 47 F.3d 539, 542 (2d Cir. 1995) (“An indication by the arresting officers to the defendant that his cooperation will help him is only one factor to consider in determining whether the defendant’s waiver was given voluntarily. There is no inconsistency between the required warning that the defendant’s statement may be used against him and a further statement that cooperation can help him. Both are true.”); Martin, 107 So.3d at 315-16 (“Law enforcement must be afforded some leeway in how they conduct interrogations to ensure public safety and to further their objective of locating a missing person who might still be alive. The interview here cannot be characterized as so coercive as to render Martin’s confession involuntary. Although some of the tactics and techniques used by the detectives may have been less than ideal, West and Wolcott did not directly threaten, deceive, or delude Martin into confessing. Therefore, we affirm the trial court’s denial of Martin’s motion to suppress.”); cf. Hart v. Attorney Gen. of State of Fla., 323 F.3d 884, 894 (11th Cir. 2003) (finding that the voluntariness of the defendant’s Miranda waiver was vitiated by a detective’s statements—to a seventeen-year-old defendant—that having an attorney present would be a disadvantage and that “honesty wouldn’t hurt him”).
For all of the above reasons, I respectfully dissent from the reversal of the denial of the motion to suppress the statements made during Pierce’s custodial interview.